1
2
3
4
5
6

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

7
8
9
10
11
12
13

MICHAEL E. PERRY,

          Plaintiff,

  vs.

MICHAEL J. ASTRUE, Commissioner of Social
Security,

         Defendant.
_____/

No. C 09-4908 MEJ

**ORDER REMANDING CASE FOR
FURTHER PROCEEDINGS**

**United States District Court**
For the Northern District of California

## I. INTRODUCTION

      Plaintiff Michael E. Perry ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g) and 42 U.S.C. §1383(c)(3), seeking judicial review of the decision of the Commissioner of Social Security, Defendant Michael J. Astrue ("Defendant"), denying Plaintiff's claim for disability insurance benefits.  Pending before the Court are the parties' cross-motions for summary judgment. (Pl.'s Mot., ECF No. 22; Def.'s Mot., ECF No. 25.)  Having read and considered the parties' papers, the administrative record below, and the relevant legal authority, the Court hereby REMANDS this case for further administrative proceedings.

## II. BACKGROUND

### A.    Education and Work Experience

      Plaintiff was born on May 23, 1957.  (Administrative Record ("AR") 39.)  He attended high school through the eleventh grade.  (AR 139.)  In the past, Plaintiff worked as a security guard, a bus driver, and a bus service worker.  (AR 120, 134, 178.)   He is married and lives with his wife in Livermore, California.  (AR 132, 140.)

**B.     Medical History**

Plaintiff's disability application stems from knee problems since a fall he sustained at work in May of 2003, as well as pain in his hips, back, and lower extremities.  (AR 10, 133, 148, 204-07.)  Plaintiff states that he is unable to stand, sit, or bend for long periods of time without aggravating his knee pain, that he is unable to walk for long distances, and he is awaiting bilateral knee replacements.  (AR 10, 133.)

According to Plaintiff's medical records, he has a history of knee problems.  Plaintiff underwent right medial miniscus tear debridement in March 1999, and underwent a further debridement in July 1999.  (AR 205-06, 218, 423.)

On May 21, 2003, Plaintiff tripped on a step and fell forward, hitting both knees on the step.  (AR 204-05, 344.)  He was taken to the Kaiser Permanente Emergency Department in an ambulance and treated for knee pain.  (AR 204-07.)  Plaintiff underwent MRI of the right knee and foot, which revealed minimal spurring at the medial side of the knee joint.  (AR 214.)  He was given crutches, 800 mg Motrin, and ordered off work status until May 25, 2003, with a follow up on May 26, 2003.  (AR 207.)

Plaintiff saw Michael Torrano, D.C., for follow-up treatment beginning immediately after the accident.  (AR 339-419.)  In his May 28, 2003 report, Dr. Torrano diagnosed knee sprain/strain contusion of the knee with two previous surgeries on his right knee.  (AR 344.)  Dr. Torrano noted that Plaintiff needed a wheelchair to help himself get around, and that he was unable to stand without crutches.  (AR 345, 348.)  During the course of treatment, Dr. Torrano noted that Plaintiff complained of constant knee pain, and that Plaintiff could only stand and walk for limited periods of time, sometimes as little as ten minutes.  (AR 357, 362, 368-69, 385-86, 392, 401-02.)  Dr. Torrano's treatment plan consisted of electrical muscle stimulation to his knees bilaterally in conjunction with ice packs, chiropractic manipulations, myofascial release of leg, knee and calf bilaterally, and manipulation to Plaintiff's low back due to complaints arising out of limping and using crutches.  (AR 379.)  Dr. Torrano found Plaintiff totally disabled due to bilateral knee pain from May 23, 2003 through March 14, 2004.  (AR 346, 352, 358, 360, 367, 378, 383, 384, 389, 397.)  On September 23,

United States District Court
For the Northern District of California

2003, Dr. Torrano noted that Plaintiff demonstrated linear improvement in regards to his ability to ambulate, but that it was probable he would have permanent work restrictions and disability.  (AR 379.)  On September 20, 2004, Dr. Torrano concluded that Plaintiff could not stand unsupported for 15 minutes and could not walk unsupported for more than 15 minutes without rest.  (AR 217.)

On September 4, 2003, Plaintiff underwent MRIs of the left and right knees.  (AR 372-77.)  The right knee MRI showed a prior depression fracture of the tibial plateau, mild to moderate thinning of the articular cartilage along the weight-bearing surfaces of the medial femoral condyle and medial tibial plateau, moderate osteoarthritic change and/or chondromalacia of the patellofemoral joint, and no evidence of prior tears of the medial and lateral miniscus.  (AR 374-77.)  The left knee MRI showed minimal fluid, no significant effusion, no miniscal tears, moderate osteoarthritic change and/or chondromalacia in the patellofemoral joint, and moderate tendinopathy in the quadriceps tendon.  (AR 372-73.)

On July 15, 2004, Charles A. Borgia, M.D., completed a Qualified Medical Examination.  (AR 238-49.)  Dr. Borgia made the following orthopedic impression:

1.   Degenerative and traumatic arthritis, right tibial femoral and right patellofemoral joint, postoperative two arthroscopic surgeries, 1999 for medial meniscal tears, prominent plica and chonodromalacia, with minimal improvement in symptomatology.
2.   Moderate obesity, patient approximately 60 pounds over ideal maximum weight.
3.   Recovering smoker, alcoholic and drug user with no drug use past four years.
4.   Hypertension.
5.   Possible peripheral neuropathy related to causes other than knee injury.

(AR 245.)  Dr. Borgia noted that Plaintiff's problem appears to be related to his job injury, and he recommended weight loss and a total right knee replacement.  (AR 246-47.)  Dr. Borgia opined that Plaintiff has a disability that precludes heavy lifting, prolonged weight bearing, climbing, squatting, walking over uneven ground, crouching, crawling, pivoting, and other activities involving comparable physical effort.  (AR 246.)  Dr. Borgia determined that Plaintiff's disability was permanent and that he was unable to return to his usual job.  (AR 249.)

On December 18, 2004, Lara Salamacha, M.D., completed a comprehensive orthopedic evaluation.  (AR 218-21.)  Dr. Salamacha diagnosed right knee degenerative joint disease status post arthroscopic debridement x2, and left knee degenerative medial miniscus tear status post MRI scan with unknown findings.  (AR 221.)  Dr. Salamacha noted that Plaintiff had pending litigation regarding approval for total right knee replacement, but that there was no treatment planned for arthroscopic debridement of the left knee.  (AR 221.)  Dr. Salamacha found no restrictions on sitting, but limited Plaintiff's standing to two hours in the morning and two hours in the afternoon of an eight-hour day.  (AR 221.)  Dr. Salamacha also found that Plaintiff may lift 20 pounds frequently and 50 pounds occasionally, but may not perform squatting to lift more than 20 pounds.  (AR 221.)  She found no restrictions regarding bending at the waist, and that he could perform rare stooping or crouching secondary to his degenerative joint disease.  (AR 221.)

Plaintiff underwent two Residual Functional Capacity (RFC) Assessments in 2005.  (AR 224-32, 253-60.)  In the first evaluation, completed by Alfred Torre, M.D., on January 14, 2005, Dr. Torre determined that Plaintiff could occasionally lift and/or carry 20 pounds, frequently lift and/or carry 10 pounds, stand and/or walk at least 2 hours in an 8-hour day (for a maximum of 4 hours), sit for a total of about 6 hours in an 8-hour workday, and that his pushing and/or pulling was limited in his lower extremities.  (AR 225.)  Dr. Torre found no manipulative, visual, communicative, or environmental limitations, but limited Plaintiff to occasional climbing, stooping, kneeling, crouching, and crawling.  (AR 226-28.)  The assessor found that Plaintiff's symptoms were attributable to a medically determinable impairment, but the severity or duration of the symptoms alleged by Plaintiff were disproportionate to the expected severity and duration of the impairment.  (AR 229.)  Dr. Torre concluded that Plaintiff's allegations exceed the objective evidence, and that he appeared capable of a narrow range of light work.  (AR 232.)

In the second evaluation, completed by John Tysell, M.D., on July 19, 2005, Dr. Tysell determined that Plaintiff could occasionally lift and/or carry 50 pounds, frequently lift and/or carry 20 pounds, stand and/or walk at least 2 hours in an 8-hour day (for a maximum of 4 hours), sit for a total of about 6 hours in an 8-hour workday, and had unlimited pushing and/or pulling capabilities.

United States District Court
For the Northern District of California

(AR 254.)  Dr. Tysell found no manipulative, visual, communicative, or environmental limitations, but found that Plaintiff could only occasionally kneel crouch, or crawl, occasionally climb ramps and stairs, and never climb ladders, ropes, or scaffolds.  (AR 255-57.)

On May 6, 2005, Jeffrey T. Holmes, M.D., completed an Orthopaedic Independent Medical Evaluation.  (AR 290-97, 429-36, 492-98.)  Dr. Holmes provided the following impression: "Bilateral knee sprain, status post two arthroscopic surgical interventions on the right knee with persistent symptoms."  (AR 296, 435, 498.)  Dr. Holmes opined that Plaintiff qualified for occupational disability in that he has a condition of permanent incapacity that would preclude him from returning to his duties in his prior occupation.  (AR 296, 435, 498.)  However, Dr. Holmes further opined that Plaintiff did not qualify for a total and permanent disability in that he was able to perform some types of sedentary work with restrictions from certain activities, such as prolonged weight bearing, climbing ladders, walking on uneven ground and repetitive squatting, kneeling, crouching, crawling, and pivoting.  (AR 296, 435, 498.)

On May 10, 2005, Dr. Borgia responded to a request for medical records in connection with Plaintiff's initial application.  (AR 233-249.)  Dr. Borgia included a letter in which he stated that Plaintiff's limitations were that he could work and use his mental acuity at a semi-sedentary level, which indicates that he could work in a job where he would sit 50% of the time, and be up walking 50% of the time or standing 50% on an intermittent basis, but not a full four hours at each time.  (AR 234.)

On July 7, 2006, Calvin Pon, M.D., completed an Orthopedic Evaluation.  (AR 278-80.)  Regarding Plaintiff's functional capacity, Dr. Pon determined that Plaintiff could stand and walk for a total of 4-6 hours during an 8-hour workday, and could sit for a total of 6 hours during an 8-hour workday.  (AR 280.)  Dr. Pon found that Plaintiff had no restriction in stooping, reaching, and manipulative tasks, and that he could perform limited crouching, and occasional kneeling and squatting.  (AR 280.)  Dr. Pon limited Plaintiff to occasional climbing stairs, ladders, and crawling, but found no restriction in performing bilateral pushing and pulling.  (AR 280.)  Despite Plaintiff's complaints of bilateral knee pain, Dr. Pon determined that Plaintiff could perform bilateral leg-foot

control on a frequent basis, and that he should be able to lift and carry 25 pounds frequently and 50 pounds occasionally.  (AR 280.)

On July 10, 2006, Plaintiff saw Dr. Holmes for a re-evaluation concerning his knee injury. (AR 281-87, 440-50, 479-89.)  Dr. Holmes provided the following impression: (1) Bilateral knee sprain, status post two arthroscopic surgical interventions on the right knee with persistent symptoms; (2) Thoracolumbar spine strain; and (3) Bilateral hip pain.  (AR 286, 449, 488.)  Dr. Holmes determined that Plaintiff could not return to his prior work, but that he could work at a more sedentary job.  (AR 286, 449, 488.)

On August 3, 2006, Plaintiff underwent another RFC Assessment.  (AR 304-08.)  The assessor determined that Plaintiff could occasionally lift and/or carry 50 pounds, frequently lift and/or carry 25 pounds, stand and/or walk for a total of about 6 hours in an 8-hour day, sit for a total of about 6 hours in an 8-hour workday, and had unlimited push/pull capabilities.  (AR 305.)  As to Plaintiff's postural limitations, the assessor determined that Plaintiff could frequently balance and occasionally climb, stoop, kneel, crouch, and crawl.  (AR 306-07.)  The assessor found no manipulative, visual, communicative, or environmental limitations.  (AR 306.)

On May 26, 2007, Plaintiff completed a pain questionnaire.  (AR 151-53.)  In it, Plaintiff states that he had pain in both knees, his hips, back, ankles, and feet, and that it "never goes away." (AR 151.)  Plaintiff had taken Motrin three times a day, which relieved the pain within one hour, but he was not taking any medication at the time he completed the questionnaire because it had given him stomach problems.  (AR 151-52.)  Plaintiff limited his daily activities to watching television, and he uses a cane, knee brace, and wheelchair for assistance.  (AR 152-53.)

On July 19, 2007, Plaintiff again saw Dr. Holmes for an independent medical re-evaluation. (AR 468-78.)  Dr. Holmes provided the following impression: (1) Bilateral knee sprain, status post two arthroscopic surgical interventions on the right knee with persistent symptoms; (2) Thoracolumbar spine strain; and (3) Bilateral hip pain.  (AR 477.)  Dr. Holmes noted that Plaintiff continued to have marked symptoms in his back, hips, and knees, and that he remained unable to return to his previous work.  (AR 477.)  He therefore determined that Plaintiff was entitled to a

continuing occupational disability. (AR 477.) Dr. Holmes noted that Plaintiff should be permanently restricted from activities such as prolonged weight bearing, climbing ladders, walking on uneven ground and repetitive squatting, kneeling, crouching, crawling, and pivoting, and that these restrictions were "permanent" and "not expected to improve with time or further treatment." (AR 477.)

On August 9, 2007, Dr. Pon completed a further orthopedic evaluation. (AR 318-20.) Dr. Pon provided the following diagnostic impression:

1.  Chronic bilateral hip pain, possible bursitis, possible degenerative arthritis.
2.  Chronic bilateral knee pain, probable degenerative arthritis. By history, claimant had x-rays and MRI of both knees. It was told that he needs bilateral knee replacement; however, this was not done because he was too young.
3.  Chronic bilateral ankle pain, possible ligamentous-soft tissue pain, possible degenerative changes.
4.  Chronic bilateral toe pain, possible degenerative changes.

(AR 320.) Dr. Pon opined that Plaintiff could stand and/or walk for a total of 4 hours during an 8-hour workday, and could sit for a total of 6 hours during an 8-hour workday. (AR 320.) Dr. Pon found no restriction in stooping, bilateral pushing and pulling arm-hand control, reaching bilaterally, or the ability to perform gross and fine manipulative tasks with both hands. (AR 320.) Dr. Pon limited crouching, kneeling, squatting, crawling, and climbing stairs to occasionally, with climbing ladders limited to rarely to occasionally. (AR 320.) Dr. Pon determined that Plaintiff could perform bilateral pushing leg-foot control on a frequent basis, lift and carry 10 pounds frequently, and lift and carry 20 pounds occasionally. (AR 320.)

On July 30, 2008, Plaintiff saw Dr. Holmes for a further independent medical re-evaluation. (AR 455-66.) Dr. Holmes provided the following impression: (1) Bilateral knee sprain, status post two arthroscopic surgical interventions on the right knee with persistent symptoms; (2) Thoracolumbar spine strain; and (3) Bilateral hip pain. (AR 465.) Dr. Holmes noted that Plaintiff continued to have marked symptoms in his back, hips, and knees, and that his symptoms were not improving. (AR 465.) He determined that Plaintiff remained unable to return to his prior work, and he was therefore entitled to a continuing occupational disability. (AR 465.) Dr. Holmes noted that

United States District Court

For the Northern District of California

1    Plaintiff should "continue to be permanently restricted from activities such as prolonged weight

2    bearing, climbing ladders, walking over uneven ground and repetitive squatting, kneeling,

3    crouching, crawling, and pivoting," finding that the restrictions were "permanent" and "not expected

4    to improve with time or further treatment." (AR 465.)

5    **C.      Procedural Background**

6            On April 13, 2005, Plaintiff filed an application for a period of disability and disability

7    insurance benefits. (AR 9, 94-98.) The application was denied initially on July 21, 2005, (AR 9,

8    39), and upon reconsideration on November 23, 2005 (AR 9, 40.) Plaintiff did not seek further

9    review of the denial of his April 13, 2005 application. (AR 9.)

10           Plaintiff filed a second application for benefits on March 7, 2006, alleging disability

11   beginning May 22, 2003. (AR 9, 99-103.) The application was denied initially on August 3, 2006,

12   (AR 41), and upon reconsideration on August 29, 2007 (AR 42.) Plaintiff filed a timely request for

13   hearing on October 4, 2007. (AR 70-71.)

14           On November 5, 2008, Administrative Law Judge ("ALJ") Randolph E. Schum heard the

15   case. (AR 16-38.) Plaintiff appeared at the hearing represented by his attorney, Dolly Trompeter.

16   (AR 9, 16.) Gerald Belchick, Ph.D., testified as an impartial vocational expert. (AR 9, 32-37.) On

17   December 19, 2008, ALJ Schum concluded that Plaintiff was not disabled under the Social Security

18   Act. (AR 9-15.) ALJ Schum's decision became the final decision of the Commissioner when the

19   Appeals Council declined to review it on August 12, 2009. (AR 1-3.)

20   **D.      The ALJ's Findings**

21           The regulations promulgated by the Commissioner of Social Security provide for a five-step

22   sequential analysis to determine whether a Social Security claimant is disabled. 20 C.F.R. §

23   404.1520; *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). The sequential inquiry is terminated

24   when "a question is answered affirmatively or negatively in such a way that a decision can be made

25   that a claimant is or is not disabled." *Pitzer v. Sullivan*, 908 F.2d 502, 504 (9th Cir. 1990).

26           The ALJ must first determine whether the claimant is performing "substantial gainful

27   activity," which would mandate that the claimant be found not disabled regardless of medical

28                                                Page 8 of  27

1  condition, age, education, and work experience. 20 C.F.R. § 404.1520(b). Here, ALJ Schum

2  determined that Plaintiff had not performed substantial gainful activity since May 22, 2003. (AR

3  10.)

4       At step two, the ALJ must determine, based on medical findings, whether claimant has a

5  "severe" impairment or combination of impairments as defined by the Social Security Act.[1] If no

6  severe impairment is found, the claimant is not disabled. 20 C.F.R. § 404.1520(c). Here, ALJ

7  Schum determined that the evidence established that Plaintiff suffered from severe "bilateral

8  degenerative joint disease of the knees, lumbar strain, and obesity." (AR 10.)

9       If the ALJ determines that the claimant has a severe impairment, the process proceeds to the

10 third step, where the ALJ must determine whether the claimant has an impairment or combination of

11 impairments which meets or equals an impairment in the Listing of Impairments. 20 C.F.R. §

12 404.1520(d); 20 C.F.R. Pt. 404, Subpt. P, App. 1. If a claimant's impairment either meets the listed

13 criteria for the diagnosis or is medically equivalent to the criteria of the diagnosis, he is conclusively

14 presumed to be disabled. *Ramirez v. Shalala*, 8 F.3d 1449, 1452 (9th Cir. 1993) (citation omitted).

15 Here, ALJ Schum determined that Plaintiff did not have any impairment or combination of

16 impairments meeting or equaling in severity any impairment set forth in the Listing of Impairments.

17 (AR 10-11.)

18      The fourth step of the evaluation process requires that the ALJ determine whether the

19 claimant's Residual Functional Capacity ("RFC") is sufficient for him to perform past relevant work.

20 20 C.F.R. § 404.1520(e). RFC refers to what an individual can do in a work setting, despite

21 limitations caused by medically determinable impairments. 20 C.F.R. § 416.945(a). In assessing an

22 individual's RFC, the ALJ must consider his or her symptoms (such as pain), signs, and laboratory

23 findings together with other evidence. 20 C.F.R. § 404, Subpt. P, App. 2 § 200.00(c). Here, ALJ

24

25      [1]At step two, "severe" means any impairment or combination of impairments that significantly limits the
       claimant's physical or mental ability to perform basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). This
26 is a de minimis inquiry designed to weed out nonmeritorious claims at an early stage in the analysis. *Bowen v.
       Yuckert*, 482 U.S. 137, 148, 153-4 (1987). "[O]nly those claimants with slight abnormalities that do not
27 significantly limit any basic work activity can be denied benefits" at step two of the analysis. *Id*. at 158.

28                              Page 9 of  27

1   Schum determined that Plaintiff has the RFC to "perform light work, as defined at 20 CFR

2   404.1567(b), with occasional stooping, kneeling, crouching, crawling and stair and ramp climbing,

3   and no rope/ladder/scaffold, climbing, no repetitive use of bilateral foot controls and no concentrated

4   work at unprotected heights."  (AR 15.)  Based on this RFC, the ALJ determined that Plaintiff has no

5   impairment or combination of impairments that preclude his past relevant work as a security guard.

6   (AR 15.)

7          In the fifth step of the analysis, the burden shifts to the ALJ to prove that there are other jobs

8   existing in significant numbers in the national economy which the claimant can perform consistent

9   with the medically determinable impairments and symptoms, functional limitations, age, education,

10  work experience and skills.  20 C.F.R. § 404.1520(a)(4)(v); 20 C.F.R. § 404.1560(c).  However, as

11  ALJ Schum determined in step four that Plaintiff is capable of performing his past relevant work, he

12  did not reach the fifth step, and thus determined that Plaintiff is not disabled.  (AR 15.)

13                                    **III.  LEGAL STANDARD**

14         This Court has jurisdiction to review final decisions of the Commissioner pursuant to 42

15  U.S.C. § 405(g).  The ALJ's decision must be affirmed if the findings are "supported by substantial

16  evidence and if the [ALJ] applied the correct legal standards."  *Holohan v. Massanari*, 246 F.3d

17  1195, 1201 (9th Cir. 2001) (citation omitted).  "Substantial evidence" means more than a scintilla,

18  but less than a preponderance, or evidence which a reasonable person might accept as adequate to

19  support a conclusion.  *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).  The court must

20  consider the "administrative record as a whole, weighing both the evidence that supports and

21  detracts from the ALJ's conclusion."  *McAllister v. Sullivan*, 888 F.2d 599, 602 (9th Cir. 1989).

22  However, where the evidence is susceptible to more than one rational interpretation, the court must

23  uphold the ALJ's decision.  *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989).

24  Determinations of credibility, resolution of conflicts in medical testimony, and all other ambiguities

25  are to be resolved by the ALJ.  *Id*.  Additionally, the harmless error rule applies where substantial

26  evidence otherwise supports the ALJ's decision.  *Curry v. Sullivan*, 925 F.2d 1127, 1131 (9th Cir.

27  1990) (citation omitted).

28

**IV.  ISSUES**

Plaintiff seeks reversal of the ALJ's denial of disability insurance benefits, arguing that:

(1)   The ALJ committed legal error by failing to provide sufficient reasons for rejecting the treating physicians' opinions.

(2)   The ALJ failed to provide sufficient reasons for rejecting Plaintiff's testimony.

(3)   The ALJ's assessment of Plaintiff's RFC is not supported by substantial evidence.

(4)   The ALJ's finding that Plaintiff could perform his past work is not supported by substantial evidence and is legal error.

**V.  DISCUSSION**

**A.     Whether the ALJ Committed Legal Error by Failing to Provide Sufficient Reasons for Rejecting the Treating Physicians' Opinions.**

In his motion, Plaintiff argues that the ALJ failed to provide clear and convincing reasons for rejecting the opinions of Dr. Borgia and Dr. Holmes, his treating physicians.  (Pl.'s Mot. 18, ECF No. 22.)  In his decision, ALJ Schum summarized the treating physicians' findings and opinions, but found that they were inconsistent with the evidence of record.  (AR 11-13.)

Dr. Borgia found moderate osteoarthritis in the right knee and slight moderate osteoarthritis in the left knee, as well as degenerative and traumatic arthritis of the right tibial femoral and right patellofemoral joint and moderate obesity.  (AR 11, 246.)  Dr. Borgia concluded that a right total knee replacement was necessary.  (AR 11, 246.)  However, Dr. Borgia also concluded that Plaintiff could still work without surgery, but could not perform heavy lifting, prolonged weight bearing, climbing, squatting, walking over uneven ground, crouching, crawling, or pivoting.  (AR 11, 246.)

Dr. Holmes found possible mild degenerative arthritic changes in both knees.  (AR 13, 296, 435, 498.)  Dr. Holmes concluded that Plaintiff qualified for occupational disability in that he has a condition of permanent incapacity that would preclude him from returning to his duties at Santa Clara Valley Transit Authority, but that he could perform more sedentary work.  (AR 13, 296, 435, 498.)  Specifically, Dr. Holmes concluded that Plaintiff was restricted from prolonged weight bearing, climbing ladders, walking on uneven ground and repetitive squatting, kneeling, crouching,

United States District Court
For the Northern District of California

1    crawling, and pivoting.  (AR 13, 296, 435, 498.)

2            The ALJ considered the treating physicians' opinions but rejected them based on the opinion

3    of Dr. Pon, Plaintiff's examining physician.  (AR 12-13.)  Dr. Pon found that Plaintiff had some

4    atrophy of his right calf and right knee hypertrophy, as well as some limited motion in his hips.  (AR

5    12, 280.)  Dr. Pon also found probable degenerative arthritis in the knees and possible degenerative

6    arthritis in the hips, ankles, and toes.  (AR 12, 320.)  However, Dr. Pon concluded that Plaintiff

7    could perform occasional crouching, kneeling and squatting and climbing of stairs and ladders,

8    lifting and carrying 25 pounds frequently and 50 pounds occasionally, and that his other functions

9    were unrestricted.  (AR 12, 280.)  The ALJ found that Dr. Pon's opinion was more consistent with

10   the medical evidence of record.  (AR 13.)

11           The ALJ also rejected the treating physicians' opinions based on Plaintiff's routine outpatient

12   treatment.  (AR 13.)  While Dr. Borgia recommended total knee replacement surgery for Plaintiff's

13   moderate osteoarthritis, the ALJ noted that Plaintiff did not provide any evidence of treatment for

14   the condition except for chiropractic appointments.  (AR 13, 216, 339-419.)  Furthermore, despite

15   the treating physicians' opinions describing a condition with pain that significantly impaired

16   Plaintiff's functions, Plaintiff was only taking over-the-counter pain medication.  (AR 13.)

17           In his motion, Plaintiff argues that the ALJ failed to provide "any reason" for rejecting the

18   treating physicians' opinions.  (Pl.'s Mot. 18,  ECF No. 22.)  Plaintiff also argues that the ALJ did not

19   consider his proffered reasons for the lack of treatment, including the side-effects of the

20   recommended pain medication and Plaintiff's inability to afford the recommended treatment.  (Pl.'s

21   Rep. 6,  ECF No. 27.)  In response, Defendant argues that the ALJ properly rejected the treating

22   physicians' opinions based on Dr. Pon's opinion and Plaintiff's routine outpatient treatment.  (Def.'s

23   Mot. 5-6, ECF No. 25.)

24           "Cases in [the Ninth Circuit] distinguish among the opinions of three types of physicians: (1)

25   those who treat the claimant (treating physicians); (2) those who examine but do not treat the

26   claimant (examining physicians); and (3) those who neither examine nor treat the claimant

27   (nonexamining physicians)."  *Lester v. Chater,* 81 F.3d 821, 830 (9th Cir. 1995).  Here, neither side

28                                         Page 12 of  27

**United States District Court**
For the Northern District of California

1    disputes that Dr. Borgia and Dr. Holmes are Plaintiff's treating physicians.  Generally, an opinion of

2    a treating physician should be favored over that of a non-treating physician.  *Id*. at 830-31.

3    However, a treating physician's opinion "is not binding on an ALJ with respect to the existence of an

4    impairment or the ultimate determination of disability."  *Tonapetyan v. Halter*, 242 F.3d 1144, 1148

5    (9th Cir. 2001).

6           In determining what weight to give a medical opinion, the ALJ should give a treating

7    physician's opinion controlling weight if it is "well-supported by medically acceptable clinical and

8    laboratory diagnostic techniques and is not inconsistent with the other substantial evidence."

9    *Magallanes*, 881 F.2d at 751; 20 C.F.R. § 404.1527(d)(2).  If a treating physician's opinion is

10   uncontradicted, an ALJ must give "clear and convincing" reasons that are supported by substantial

11   evidence to reject the opinion.  *Lester*, 81 F.3d at 830-31.  However, if the treating physician's

12   opinion is contradicted, an ALJ need only give "specific and legitimate reasons that are supported by

13   substantial evidence in the record" to reject the opinion.  *Id*.  "The ALJ is responsible for

14   determining credibility and resolving conflicts or ambiguities in the medical evidence."  *Magallanes*,

15   881 F.2d at 750.

16          Here, the Court finds that the ALJ properly rejected the treating physicians' opinions based

17   on Dr. Pon's contradictory opinion.  Plaintiff does not argue that it was improper for the ALJ to rely

18   on Dr. Pon; instead, he argues that the ALJ requires at least specific and legitimate reasons

19   supported by substantial evidence in the record to reject the treating physicians' opinions and that

20   "the ALJ failed to provide any reason."  (Pl.'s Mot. 18, ECF No. 22.)  An examining physician's

21   opinion can be considered substantial evidence when based on independent findings that differ from

22   the findings of a treating physician.  *Magallanes*, 881 F.2d at 751.  Thus, an examining physician's

23   opinion can be considered substantial evidence sufficient to reject a treating physician's opinion

24   when that opinion is consistent with independent findings.  *Connet v. Barnhart*, 340 F.3d 871, 875

25   (9th Cir. 2002) (finding that the ALJ properly rejected the treating physician's opinion based on a

26   separate examining physician's opinion that was consistent with independent findings).

27          Dr. Pon considered Plaintiff's medical record, including the medical examination report by

28                                              Page 13 of  27

1   Dr. Borgia.  (AR 278.)  However, Dr. Pon also considered his own independent findings.  (AR 278-

2   80.)  Dr. Pon found that Plaintiff was "a well-developed, well-nourished male, who was noted to be

3   sitting in the waiting room comfortably."  (AR 279.)  Dr. Pon also noted that Plaintiff got out of his

4   chair in the waiting room and walked into the examination room without any issue.  (AR 279.)  Dr.

5   Pon found that Plaintiff ambulated without assistance and that his gait had a normal cadence,

6   velocity, and stride, without a limp.  (AR 279.)   Dr. Pon further noted that Plaintiff was able to

7   undress, bend over, and take off his shoes and socks without discomfort.  (AR 279.)  Because Dr.

8   Pon based his opinion on these independent clinical findings, the Court finds that it is properly

9   considered as substantial evidence.  *Magallanes*, 881 F.2d at 751.  Thus, Dr. Pon's opinion provides

10  a specific and legitimate reason to reject the treating physicians' opinions.

11          The ALJ also rejected the treating physicians' opinions because he found them to be

12  inconsistent with the routine out-patient treatment that Plaintiff received.  The ALJ may reject a

13  treating physician's opinion that is inconsistent with the treatment history as well as the physician's

14  own findings.  *Khounesavatdy v. Astrue*, 549 F. Supp. 2d 1218, 1228 (E.D Cal. 2008)  In

15  *Khounesavatdy*,  the treating physician found that the plaintiff had "low back pain, degenerative

16  joint disease (spinal), hypercholesterolemia, and impaired vision."  *Id.*  The treating physician

17  concluded that the plaintiff was disabled, stating that he could "walk less than one block, sit or stand

18  less than five minutes at a time, and sit, stand, and walk less than two hours in an eight-hour work

19  day."  *Id.*  The treating physician also concluded that the plaintiff could only rarely look down, turn

20  his head left or right, hold his head still, twist, stoop, crouch, climb ladders or stairs, and was

21  significantly limited in repetitive reaching, handling or fingering.  *Id.*  The ALJ rejected this

22  assessment, finding it inconsistent with the clinical and x-ray findings and the medical treatment of

23  record.  *Id.*  Specifically, the ALJ looked to an examination which showed the plaintiff's back was

24  "nontender," and that he had "no neurological deficits."  *Id.*  The ALJ also considered the nature of

25  the treatment history, including the lack of referral for an orthopedic or neurological examination,

26  physical therapy, or any other basic treatment mode besides medication.  *Id.*

27          In reviewing the ALJ's decision, the court noted that the ALJ considered the totality of the

28                                                  Page 14 of  27

United States District Court
For the Northern District of California

1  medical evidence of record and interpreted it as generally reflecting mild or normal objective

2  findings and treatment for mild or moderate pain, and that the treating physician's opinion was

3  therefore not well-supported by the weight of the objective medical evidence.  *Id.*  The court also

4  considered the ALJ's reliance on the conservative treatment given to the plaintiff by the treating

5  physician, including relief of his pain with medication, including Ibuprofen, and the plaintiff's

6  testimony revealing that the only treatment he received was a back brace, which was not shown to

7  have been prescribed; a cane, which another of the plaintiff's doctors opined was unnecessary; and

8  medication (Ibuprofen three times a day).  *Id.* at 1230.  The court thus found that the completely

9  disabling extent of the plaintiff's condition, as reflected in the treating physician's assessment of the

10  plaintiff's total disability, was inconsistent with the mild level of treatment and a medical history in

11  which Ibuprofen relieved the plaintiff's pain.  *Id.*  Based on this record, the court concluded that the

12  ALJ stated specific and legitimate reasons, supported by substantial evidence, for placing little

13  weight on the treating physician's opinion.  *Id.* at 1231.

14       Here, Dr. Borgia recommended a total knee replacement for moderate osteoarthritis in the

15  right knee.  (AR 246.)  Dr. Holmes diagnosed possible mild degenerative arthritic changes of both

16  knees, and he limited Plaintiff from prolonged weight bearing, climbing ladders, walking on uneven

17  ground and repetitive squatting, kneeling, crouching, crawling, and pivoting.  (AR 296, 435, 498.)

18  Despite these assessments, Plaintiff only saw a chiropractor to treat the pain and managed the knee

19  pain with limited use of over-the-counter medications.  (AR 11.)  While Plaintiff refers to the use of

20  assistive devices such as canes and wheelchairs, none of these were shown to have been prescribed.

21  Thus, as Dr. Borgia's opinion was inconsistent with Plaintiff's treatment history, it appears that the

22  ALJ's rejection of these opinions was reasonable.

23       However, Plaintiff argues that it was legal error for the ALJ to rely on Plaintiff's routine out-

24  patient treatment to reject his treating physicians' opinions without first considering Plaintiff's

25  proffered reasons for the lack of treatment.  (Pl.'s Rep. 6, ECF No. 27.)  Specifically, Plaintiff argues

26  that his treatment was limited because of his reliance on worker's compensation for treatment, and

27  that pain medication was limited because of the side-effects that the recommended medications had

28

on him.  (*Id.*)  At the hearing on November 5, 2008, Plaintiff testified in response to the ALJ's query

about not being able to see a regular orthopedist:

| | | |
|---|---|---|
| Plaintiff: | Basically, it's money. | |
| ALJ: | Worker's comp? | |
| Plaintiff: | Worker's comp has -- the attorney for worker's comp, for some reason, has not sent me any doctor's names for the settlement.  I've contacted him three or four times and he says he will and he didn't.  Had he sent me them, I'd be able to know who I can go see.  I don't know who I can see at this time.  And I have no money. | |

(AR 31.)

Additionally, in response to a question regarding medications, Plaintiff testified:

| | | |
|---|---|---|
| Plaintiff: | I take Motrin 800's.  I was prescribed 800's.  I was also prescribed Vicodin.  I like Motrin's much better. | |
| ALJ: | Why don't you like the Vicodin? | |
| Plaintiff: | The Vicodin makes my head fuzzy the next day, like I got a hang over or something. So I don't take them. | |
| ALJ: | Okay. | |
| Plaintiff: | And the 800's work much better anyway. | |

(AR 30.)

As the ALJ did not follow up on this testimony, Plaintiff argues he failed in his duty to fully and

fairly develop the record.  (Pl.'s Rep. 6,  ECF No. 27.)  However, while Plaintiff cites SSR 96-7p as

legal authority for this argument, SSR 96-7p concerns the credibility of an individual's statements,

not the weight accorded to a treating physician's opinion.  SSR 96-7p.  Thus, SSR 96-7p is

inapplicable here and the Court shall address Plaintiff's argument below as it applies to the ALJ's

credibility assessment.  However, even assuming that the ALJ erred in this regard, such error was

harmless as the ALJ articulated other specific and legitimate reasons for rejecting the treating

physicians' opinions.  *Curry*, 925 F.2d at 1131 (citation omitted).

In his reply, Plaintiff also argues that the ALJ committed legal error when discrediting the

opinions of Dr. Salamacha and Michael Torrano D.C.  (Pl.'s Rep. 4-5, ECF No. 27.)  The ALJ

considered Dr. Salamacha's findings and opinion, but he rejected the opinion based on Dr. Pon's

United States District Court
For the Northern District of California

1   opinion and Plaintiff's routine out-patient treatment.  (AR 12-13.)  The ALJ found that Dr. Torrano

2   was not a licensed physician and as such his opinion was entitled to less weight.  (AR 13.)

3         Dr. Salamacha found bilateral degenerative joint disease of both knees and obesity.  (AR 12,

4   221.)  Dr. Salamacha concluded that Plaintiff's condition would not preclude him from standing and

5   walking for two hours at a time up to four hours a day with unlimited sitting, lifting 20 pounds

6   frequently and 50 pounds occasionally and lifting 20 pound from a squatting position.  (AR 12, 221).

7   However, for the same reasons discussed above, the ALJ properly rejected Dr. Salamacha's opinion

8   in favor of Dr. Pon's contradictory opinion, which was based on independent findings.  *Magallanes*,

9   881 F.2d at 751.

10         As to Dr. Torrano, chiropractors are not considered an acceptable medical source and the

11   ALJ is not required to accept or specifically refute their opinion.  20 C.F.R. §§ 404.1513(e)(3),

12   404.1527(a)(2)*; Bunnell v. Sullivan*, 912 F.2d 1149, 1152 (9th Cir. 1990), *modified on other*

13   *grounds*, 947 F.2d 341 (9th Cir. 1991).  Thus, the ALJ properly assigned Dr. Torrano's opinion less

14   weight because he was not an acceptable medical source and the ALJ was not required to accept his

15   opinion.

16         Based on the analysis above, the Court concludes that the ALJ stated specific and legitimate

17   reasons, supported by substantial evidence, for rejecting Plaintiff''s treating physicians' opinions.

18   **B.**   **Whether the ALJ Failed to Provide Sufficient Reasons for Rejecting Plaintiff's**
         **Testimony.**

19

20         Plaintiff next argues that the ALJ committed legal error by failing to provide clear and

21   convincing reasons for discrediting Plaintiff's testimony about his subjective pain and symptoms.

22   (Pl.'s Mot. 21-22, ECF No. 22)  The ALJ found that Plaintiff's medical record, including the use of

23   only over-the-counter pain medications and routine out-patient treatment, was inconsistent with

24   Plaintiff's testimony about disabling knee pain, the need for total knee replacement surgery, and

25   other symptoms.  (AR 13.)

26         At the hearing, Plaintiff testified about his pain and symptoms in general:

27

28

| | | |
|---|---|---|
| 1 | ALJ: | What kind of problems do you have with the right knee? |
| 2 | | |
| 3 | Plaintiff: | The right knee, sir, it buckles when I walk at any time. Also, of course, the swelling, and it's aggravated everything else.  The ankles now swell.  The lower back hurts.  Upper back hurts and neck and shoulders because of the bad limp.  So I favor the right leg. |
| 4 | | |
| 5 | ALJ: | What kind of problems, if any, are you having with the left leg? |
| 6 | | |
| 7 | Plaintiff: | The left leg doesn't buckle like the right one does.  But it does swell up and it does have lots of pain in it at times. |
| 8 | | |

9  (AR 24.)

10  Plaintiff testified specifically that he could stand twenty to thirty minutes without experiencing pain,

11  sit about thirty minutes without having to change positions, and walk about half a block, taking

12  between five and ten minutes, without significant pain.  (AR 26-27.)  Plaintiff testified that Dr.

13  Borgia, "a worker's comp doctor" recommended a right knee replacement.  (AR 23.)  Additionally,

14  Plaintiff testified that he relied on a wheelchair when he didn't have a cane, that his knee buckles

15  five to ten times a day, and that he takes an hour and fifteen minutes to get dressed.  (AR 27, 29.)

16  Plaintiff also testified that he did no cooking, cleaning, laundry, shopping, or gardening, and that it

17  was very difficult for him to take a shower.  (AR 29.)

18      Plaintiff also testified to sleeping difficulties:

| | | |
|---|---|---|
| 19 | ALJ: | Okay.  How -- do you sleep through the night? |
| 20 | Plaintiff: | No. |
| 21 | ALJ: | How often do you wake up during the night? |
| 22 | Plaintiff: | Anywhere from three to six times a night. |
| 23 | ALJ: | And why do you wake up during the night like that? |
| 24 | Plaintiff: | Sometimes I have Charlie horses -- every night I have Charlie horses in my legs.  And sometimes it just feels like my knee has been -- when you sleep, sometimes you stretch in your subconscious mind.  Well, I guess I do that.  And when I do stretch like that, it feels like my knee has torn. |
| 25 | | |
| 26 | | |
| 27 | | |

28                                 Page 18 of  27

**United States District Court**
For the Northern District of California

1    ALJ:          Okay

2    Plaintiff:    And a shooting pain kicks me right up out of bed.

3  (AR 28.)

4       In his decision, the ALJ found that Plaintiff suffered from medically determinable

5  impairments including bilateral degenerative joint disease of the knees, lumbar strain and obesity.

6  (AR 10.)  However, the ALJ found that the medical evidence, as well as Plaintiff's inconsistent

7  statements and conduct, discredited his testimony that his pain and other symptoms precluded all

8  work.  (AR 15.)  In discussing Plaintiff's treatment history, the ALJ focused on the use of only over-

9  the-counter medications and routine out-patient treatment.  (AR 13.)   The ALJ also found that

10  Plaintiff's claim that he could perform "absolutely no chores" was inconsistent with his testimony

11  that he was able to drive and could fill up his gas tank.  (AR 14.)

12      In his motion, Plaintiff argues that the ALJ failed to provide clear and convincing reasons to

13  discredit his testimony, and that the reasons he gave lack substantial evidence to support them.  (Pl.'s

14  Mot. 20-21, ECF No. 22.)  First, Plaintiff argues that once an underlying impairment capable of

15  causing pain is established, the ALJ may not discredit testimony simply because the degree of pain

16  or limitation is not supported by the medical evidence.  (*Id.* at 21.)  Second, Plaintiff argues that the

17  ALJ committed legal error because he failed to identify which testimony he found inconsistent, as

18  well as how any such testimony was inconsistent.  (*Id* at 22.)  Third, Plaintiff argues that the ALJ

19  cannot discredit subjective pain testimony based on a failure to seek treatment when the record

20  shows that Plaintiff was unable to afford further treatment.  (*Id* at 23; Pl.'s Rep. 6, ECF No. 27.)

21  Fourth, Plaintiff argues that the ALJ cannot discredit subjective pain testimony based on the type

22  and dosage of medication because the ALJ failed to take into account that he suffered from extreme

23  side effects. (Pl.'s Mot. 21, ECF No. 22; Pl.'s Rep. 6, ECF No. 27.)  Finally, Plaintiff argues that

24  engaging in activities such as short-distance driving or filling up his gas tank does not undermine his

25  credibility because one does not need to be "utterly incapacitated" in order to be disabled.  (Pl.'s

26  Mot. 23-24, ECF No. 22.)

27      In response, Defendant argues that it is impermissible to grant disability benefits based on

28                                 Page 19 of  27

United States District Court
For the Northern District of California

Plaintiff's subjective complaints.  (Def.'s Mot. 6, ECF No. 25.)  Defendant also argues that the ALJ

properly considered the limited nature of Plaintiff's treatment history and Plaintiff's inconsistent

testimony regarding day-to-day activities when determining his credibility.  (*Id*. at 7-8.)

A two-step analysis is used when determining whether a claimant's testimony regarding their

subjective pain or symptoms is credible.  *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir.

2007).  First, it must be determined "whether the claimant has presented objective medical evidence

of an underlying impairment 'which could reasonably be expected to produce the pain or other

symptoms alleged.'"  *Id*. at 1036 (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en

banc)).  A claimant does not need to "'show that her impairment could reasonably be expected to

cause the severity of the symptom she has alleged; she need only show that it could reasonably have

caused some degree of the symptom.'"  *Id*. (quoting *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir.

1996)).

Second, if the claimant has met the first step and there is no evidence of malingering, "'the

ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific,

clear and convincing reasons for doing so.'"  *Id*. (quoting *Smolen*, 80 F.3d at 1281).  "The ALJ must

state specifically which symptom testimony is not credible and what facts in the record lead to that

conclusion."  *Smolen*, 80 F.3d at 1284.  In evaluating subjective symptom testimony, the ALJ must

consider (1) the nature, location, onset, duration frequency, radiation, and intensity of the pain; (2)

precipitating and aggravating factors (movement, activity, environmental factors); (3) type, dosage,

and adverse side-effects of any pain medication; (4) treatment, other than medication, for relief of

pain; (5) functional restrictions; and (6) the plaintiff's daily activities.  *Id*.  Where the ALJ "has made

specific findings justifying a decision to disbelieve an allegation of excess pain, and those findings

are supported by substantial evidence in the record," courts must not engage in second-guessing.

*Fair v. Bowen*, 885 F.2d 597, 604 (9th Cir. 1989).

Here, at the first step, the ALJ determined that Plaintiff suffered from bilateral degenerative

joint disease of the knees, lumbar strain, and obesity.  (AR 10.)  Since the ALJ did not find that the

record contained any affirmative evidence of malingering, and Defendant has not pointed to any, the

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

1   issue before the Court is whether the ALJ provided reasons for his adverse credibility determination

2   that satisfy the "clear and convincing" standard set forth above.

3          In his decision, the ALJ states that he found "specific and legitimate reasons to reject

4   [Plaintiff's] statements . . . regarding his symptoms." (AR 13.)  However, the ALJ failed to state

5   specifically what testimony of Plaintiff was rejected and what facts in the record led to that rejection.

6   The ALJ refers to Plaintiff's statement to Dr. Pon that he could do "absolutely no chores," and

7   contrasts this generally with Plaintiff's routine out-patient care and use of over-the-counter

8   medications, yet the only specific contradictory testimony to which he refers is Plaintiff's ability to

9   drive and fill up his gas tank. (AR 14.)  This general finding does not satisfy the ALJ's burden.

10  *Rivas v. Astrue*, 2009 WL 700051, at *4 (C.D. Cal. Mar. 13, 2009) ("While the ALJ may consider

11  relative inconsistencies in plaintiff's testimony in assessing his credibility, or otherwise determine to

12  reject pain testimony, the ALJ must specifically set forth what claimed symptoms and/or limitations

13  are rejected and what specific evidence in the record undermines them.")  This failure to set forth

14  specific reasons constitutes error.  *Id.*  Indeed, "a reviewing court should not be forced to speculate

15  as to the grounds for an adjudicator's rejection of a claimant's allegations of disabling pain."

16  *Bunnell*, 947 F.2d at 346.

17         The ALJ's decision fails to specify which portions of Plaintiff's testimony were not credible

18  and what evidence undermined Plaintiff's subjective complaints.  This lack of specificity makes it

19  impossible to determine whether and why the ALJ rejected all or only portions of Plaintiff's

20  subjective complaints.  Further, the fact that the Court cannot determine whether the ALJ intended

21  his discussion of Plaintiff's credibility to include any factor other than the generalities discussed

22  therein is proof that the ALJ was not "sufficiently specific to allow a reviewing court to conclude the

23  ALJ rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit the

24  claimant's testimony." *Moisa v. Barnhart*, 367 F.3d 882, 885 (9th Cir. 2004) (citations omitted)

25  (failure to make findings that would allow the court to conclude that the ALJ rejected the testimony

26  on permissible grounds, such as a reputation for dishonesty, conflicts between the claimant's

27  testimony and his conduct, or internal contradictions in the testimony, constitutes clear error).  Thus,

28

1   the ALJ's credibility determination was error.

2          As part of his argument regarding the ALJ's failure to consider his subjective complaints,

3   Plaintiff briefly discusses the ALJ's alleged failure to consider third party evidence in the record.

4   (Pl.'s Mot. 22-23, ECF No. 22.)  Specifically, Plaintiff argues that the ALJ "did not discuss the fact

5   that the SSA field agent noted during [Plaintiff's] face to face interview that [Plaintiff] had difficulty

6   with walking and standing."  *Id.* at 23.  Plaintiff also argues that "the ALJ did not address the

7   evidence in the record that the DMV issued [Plaintiff] a disabled driver certificate dated June 2003

8   due to 'significant limitation in the use of lower extremities.'"  *Id.*  Defendant does not address this

9   argument in his cross-motion.

10          "In determining whether a claimant is disabled, an ALJ must consider lay witness testimony

11   concerning a claimant's ability to work."  *Stout v. Comm'r*, *Soc. Sec. Admin.*, 454 F.3d 1050, 1053

12   (9th Cir. 2006); 20 C.F.R. § 404.1513(d)(4).  Such testimony may not be disregarded without

13   comment, and if an ALJ would like to do so, "'he must give reasons that are germane to each

14   witness.'"  *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996) (quoting *Dodrill v. Shalala*, 12

15   F.3d 915, 919 (9th Cir. 1993)).  "[W]here the ALJ's error lies in a failure to properly discuss

16   competent lay testimony favorable to the claimant, a reviewing court cannot consider the error

17   harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the

18   testimony, could have reached a different disability determination."  *Stout*, 454 F.3d at 1056.

19   Competent lay testimony may come in the form of "[d]escriptions by friends and family members in

20   a position to observe a claimant's symptoms and daily activities."  *Sprague v. Bowen*, 812 F.2d 1226,

21   1232 (9th Cir. 1987); *Nguyen*, 100 F.3d at 1467 (explaining that lay persons are not competent to

22   make medical diagnoses, but can competently testify as to a claimant's symptoms or how an

23   impairment affects a claimant's ability to work).

24          Here, the Court finds that the ALJ did not err in failing to consider the evidence presented by

25   Plaintiff.  As to the DMV disabled driver certificate, such evidence is not determinative on the issue

26   of disability because the DMV utilizes different criteria for issuing disabled placards which cannot

27   be interchanged with the guidelines set forth by the Social Security Administration.  *Beauchamp v.*

28

United States District Court
For the Northern District of California

1   *Astrue*, 2010 WL 2925431, at *12 (S.D. Cal. Apr. 23, 2010).  Thus, Plaintiff's contention is without

2   merit.  As to the SSA field agent's notes, Plaintiff cites to no legal authority establishing that field

3   notes from an SSA employee constitute lay evidence.  Further, as discussed above, the ALJ did

4   consider that Plaintiff had difficulty with walking and standing, and Plaintiff fails to establish how

5   these field notes would have changed his decision.  *Moore v. Astrue*, No. EDCV 10–1213 JC, 2011

6   WL 1792851, at *7 (C.D. Cal. May 11, 2011) (ALJ's failure to address lay testimony regarding

7   limitations already accounted for in his decision is harmless error when the plaintiff failed to

8   demonstrate how this would have changed the RFC).  Thus, the ALJ did not err in this regard.

9       Based on the analysis above, the Court finds that the ALJ's credibility determination was

10  made in error.  Accordingly, this action must be remanded to allow the ALJ to properly consider

11  Plaintiff's subjective complaints of impairment.

12  **C.      Whether the ALJ's RFC Assessment is Supported by Substantial Evidence.**

13      Plaintiff next argues that the ALJ's finding of a residual functional capacity to perform light

14  work is "not supported by any evidence, let alone substantial evidence."  (Pl.'s Mot. 10, ECF No.

15  22.)  In his decision, the ALJ found that "consistent with the medical evidence of record, including

16  the opinions of Dr. Pon, I find the claimant is able to perform light work, as defined at 20 C.F.R. §

17  404.1567(b)[2], with occasional stooping, kneeling, crouching, crawling and stair and ramp climbing,

18  and no rope/ladder/scaffold climbing, no repetitive use of bilateral foot controls and no concentrated

19  work at unprotected heights."  (AR 13, 15.)

20      In his motion, Plaintiff directs the Court's attention to Dr. Pon's functional capacity

21  assessments, in which he limited Plaintiff's ability to stand/walk to four to six hours in an eight-hour

22  workday (July 7, 2006 Assessment, AR 280), and later limited him to four hours in an eight-hour

23  ───────────────

24      [2]   Pursuant to 404.1567(b), "Light work involves lifting no more than 20 pounds at a time with
    frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be

25  very little, a job is in this category when it requires a good deal of walking or standing, or when it
    involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered

26  capable of performing a full or wide range of light work, you must have the ability to do substantially
    all of these activities. If someone can do light work, we determine that he or she can also do sedentary

27  work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long
    periods of time."

28                          Page 23 of  27

**United States District Court**
For the Northern District of California

1   day (Aug. 9, 2007 Assessment, AR 320).  (Pl.'s Mot. 11, ECF No. 22.)  Plaintiff argues that this

2   distinction is important because the vocational expert testified at the hearing that Plaintiff could only

3   return to his work as a security guard if he could stand/walk for six hours in an eight-hour day.  (Pl.'s

4   Mot. 11, ECF No. 22.)  Beyond Dr. Pon's assessment, Plaintiff argues that there is no other evidence

5   to support the finding that he has the capacity for light work.  *Id.* at 12.  In support of his argument,

6   Plaintiff points to the following contradictory evidence: (1) a 2004 consultative report prepared by

7   Dr. Salamacha, in which she determined that Plaintiff could "stand and walk for two hours in the

8   morning and two hours in the afternoon in an eight-hour day," (AR 221); (2) two RFC assessments

9   performed by the SSA in 2005 which limit Plaintiff to four hours standing and/or walking (AR 225,

10  254); (3) a May 2005 report from Dr. Borgia, finding that Plaintiff could "be up and walking 50% of

11  the time or standing 50%, . . . [but] [n]ot a full four hours at each time, (AR 234); and Dr. Holmes'

12  conclusion that Plaintiff had an RFC for "sedentary" work (AR 435, 449, 465, 477, 482, 488).  (Pl.'s

13  Mot. 12-13, ECF No. 22.)

14         In response, Defendant argues that the ALJ properly credited the functional limitations that

15  were supported by the evidence, thereby determining that Plaintiff retained the capacity to perform a

16  limited range of light work.  (Def.'s Mot. 3-4, ECF No. 25.)  In support of this argument, Defendant

17  cites to the same assessments completed by Dr. Pon upon which Plaintiff relies, as well as a 2007

18  State agency physician who opined that Plaintiff could stand and/or walk for six hours in an eight-

19  hour day.  (AR 280, 305, 320.)

20         Prior to inquiring into whether a claimant can engage in his past relevant work, the ALJ must

21  determine the claimant's RFC for work-related activities.  20 C.F.R. § 404.1545; SSR 96-8p.  It is

22  the responsibility of the ALJ, not the claimant's physician, to determine RFC.  20 C.F.R. § 404.1545;

23  *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222-23 (9th Cir. 2009).  To determine a

24  claimant's RFC, the ALJ must review Plaintiff's typical, work-related capabilities including physical,

25  mental, and sensory capabilities as well as other functions.  20 C.F.R. § 404.1545; SSR 96-8p.  In

26  addition, the ALJ has a responsibility to consider "all of the relevant medical and other evidence" in

27  the record, including all medical opinion evidence.  20 C.F.R. §§ 404.1545(a) (3), 404.1546(c),

28

United States District Court

For the Northern District of California

416.945(a)(3), 416.946(c).  Similarly, "[t]he hypothetical an ALJ poses to a vocational expert, which derives from the RFC, 'must set out all the limitations and restrictions of the particular claimant.' Thus, an RFC that fails to take into account a claimant's limitations is defective."  *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009) (emphasis in original) (quoting *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir.1988)).

Here, as discussed above, the ALJ provided specific and legitimate reasons supported by substantial evidence for rejecting the opinions of Drs. Salamacha, Borgia, and Holmes; thus he was not required to incorporate their assessments into his RFC determination.  *See Velasquez v. Astrue*, 2011 WL 2633725, at *9 (C.D. Cal. Jul. 05, 2011) (citing *Wildman v. Astrue*, 302 Fed. Appx. 744, 748 (9th Cir.2008) (where the ALJ properly rejects opinion evidence concerning an alleged impairment, the ALJ may properly exclude the rejected impairment from the RFC determination) (citable for its persuasive value pursuant to Ninth Circuit Rule 36–3)).  However, the Court finds remand necessary for the ALJ to fully evaluate Dr. Pon's assessment.

In his decision, the ALJ correctly noted that Dr. Pon concluded in his July 2006 report that Plaintiff could stand and walk for four to six hours in an eight-hour day.  (AR 12, 280.)  However, in his discussion regarding Dr. Pon's August 2007 report, the ALJ incorrectly states that Dr. Pon reached the same conclusion.  (AR 12.)  A review of Dr. Pon's August 2007 report reveals that he concluded that Plaintiff could stand and/or walk for a total of "approximately 4 hours during an 8-hour workday."  (AR 320.)  The ALJ provides no explanation for his failure to consider Dr. Pon's second, more limited conclusion, and thus remand appears appropriate for further consideration of this issue.

Further, at the hearing, the ALJ set out five hypotheticals for the vocational expert.  In the first hypothetical, the ALJ limited the hypothetical claimant to standing or walking for two hours out of eight.  (AR 32-33.)  The expert responded that the hypothetical claimant could not work as a security guard because the position required "one to be able to stand six hours out of an eight hour day."  (AR 33.)  In the second, third, and fourth hypotheticals, the ALJ limited the stand/walk options to two hour, four hours, and four to six hours, respectively.  (AR 33.)  The expert again

Page 25 of  27

**United States District Court**
For the Northern District of California

1   responded that the claimant could not work as a security guard. (AR 33-34.) However, in the fifth

2   hypothetical, the ALJ limited the claimant to standing and/or walking for six hours out of an eight-

3   hour day. (AR 34.) Based on this increased time, the expert opined that the claimant could work as

4   a security guard. (AR 34.)

5        Given that the third and fourth hypotheticals, which do not allow for work as a security

6   guard, encompass Dr. Pon's conclusions regarding Plaintiff's ability to stand/or walk, it is unclear

7   how the ALJ determined that Plaintiff could work as a security guard, which the expert opined

8   required six hours of standing and/or walking. Thus, remand also seems appropriate so that the ALJ

9   might better explain how Plaintiff's RFC includes the ability to stand and/or walk for six hours in an

10  eight-hour day.

11       Since the Court finds that the ALJ failed to properly consider the opinions regarding

12  Plaintiff's limitations—including Dr. Pon's stand and/or walk limitations and the vocational expert's

13  opinion regarding the stand/walk requirements of a security guard position—remand is necessary for

14  the ALJ to reevaluate Plaintiff's RFC.

15  **D.      Whether the ALJ Erred in Determining that Plaintiff Could Perform His Past Work**.

16       Plaintiff's final argument is that the ALJ erred in finding that he could perform his past

17  relevant work as a security guard. (Pl.'s Mot. 13, ECF No. 22.) However, this argument is

18  duplicative of the analysis above as it is based upon the ALJ's (1) failure to consider Plaintiff's

19  subject complaints, and (2) failure to account for Dr. Pon's stand and/or walk limitations in

20  determining that Plaintiff could work as a security guard. As discussed above, remand is appropriate

21  for the ALJ to reevaluate these issues. Thus, remand is also appropriate for the ALJ to consider

22  whether Plaintiff is able to perform his past relevant work based on his reevaluation.

23                           **VI. CONCLUSION**

24       Based on the foregoing analysis, the Court finds it appropriate to remand this case. In so

25  doing, the Court has discretion to decide whether to remand for further proceedings or for an award

26  of benefits. *Reddick v. Chater*, 157 F.3d 715, 728 (9th Cir. 1998). A case should be remanded for

27  an award of benefits in cases "where there are no outstanding issues that must be resolved before a

28                           Page 26 of  27

proper disability determination can be made." *Id.* (internal quotations and citation omitted).  Here, there are outstanding issues that must be resolved, namely the ALJ's consideration of Plaintiff's subjective complaints and his RFC determination.  As further proceedings could remedy these defects, remand for an award of benefits is inappropriate.  *See, e.g., Kail v. Heckler*, 722 F.2d 1496, 1497 (9th Cir. 1984).

Accordingly, this matter is REMANDED pursuant to sentence four of 42 U.S.C. § 405(g) for further development of the record and further consideration, consistent with this decision, of Plaintiff's status as disabled, including consideration of his subjective complaints, whether Plaintiff is capable of performing work he has performed in the past, and if required, whether on the basis of Plaintiff's age, education, work experience, and residual functional capacity, Plaintiff can perform any other gainful and substantial work in the economy.  The Clerk of Court is DIRECTED TO ENTER JUDGMENT for Plaintiff Michael E. Perry and against Defendant Michael J. Astrue and to close this case.

**IT IS SO ORDERED.**

Dated: September 6, 2011

_____
MARIA-ELENA JAMES
United States Magistrate Judge

United States District Court
For the Northern District of California